STATE *v.* C. S. LECKIE et als.

Where, by an Act of the Legislature, the State remits a portion of the indebtedness of a Tax Collector, authorizing his bond to be cancelled on the payment of a fixed amount, it is a renunciation of the right to claim the interest at two per cent. per month allowed by statute in the nature of a penalty against defaulting Tax Collectors.

The State cannot be sued indirectly by way of a reconventional demand set up in the defendant's answer.

APPEAL from the District Court of the Parish of Rapides, *Cullom,* J.

    *T. C. Manning,* for plaintiff and appellant.    *O. N. Ogden* and *M. Ryan,* for defendants.

LAND, J.   This suit was instituted against the defendant, *C. S. Leckie,* and his securities on his official bond for the collection of State taxes, in the parish of Rapides, for the year 1850, for the recovery of the sum of nine thousand eight hundred and sixty-three dollars and ninety-nine cents, with interest thereon at the rate of two per cent. per month, from the first of January, 1852.

Whilst this suit was pending, a legislative Act was passed for the relief of *Charles S. Leckie,* the defendant, as follows :

" Section 1.   That the real and true amount due to the State of Louisiana by *Charles S. Leckie,* Collector of the State Taxes for the parish of Rapides, for the year 1850, is the sum of six thousand nine hundred and eighty-eight dollars and ninety-four cents.

" Sec. 2.   That on the payment of said amount of six thousand nine hundred and eighty-eight dollars and ninety-four cents, in the Treasury of the State, by *Charles S. Leckie,* or any of his securities, or any person interested, the Auditor of Public Accounts is hereby authorized to cancel the bond given by *Charles S. Leckie,* as Collector aforesaid.

" Sec. 3.   That the legal mortgage on the property of *Charles S. Leckie,* in favor of the State, as Collector of the State Taxes for the parish of Rapides, for the year 1850, shall attach to said property until the sum mentioned in this Act shall be paid ; provided that, if any person has purchased at public sale since the defalcation of said *Leckie,* any property on which said mortgage rested, on the payment of the price for which the property was sold into the Treasury of the State by the purchaser, the legal mortgage of the State shall be released on said property by the Auditor of Public Accounts.

" Sec. 4.   That the Auditor of Public Accounts shall, and he is hereby authorized to carry into effect the settlement mentioned in this Act, in the manner he may deem most judicious for the interest of the State.

" Sec. 5.   That nothing herein shall affect the rights of the State against said *Leckie* and his securities, until the amount mentioned in the first section of this Act shall be paid into the State Treasury, nor shall be so construed as to affect the suit now pending for the collection of the defalcation by said *Leckie,* until the amount shall be paid ; and provided further, that the fee due to the District Attorney, of two and one-half per cent. on the amount paid into the State Treasury, shall be paid to him by the said *Leckie,* or his securities, in compensation for his services, and all other costs of court which have or may accrue in said suit ; and provided further, that nothing herein shall be so construed as to affect the legal rights of subrogation as between the securities."   See Session Acts of 1854, page 175.

Before the passage of this Act, the real estate and slaves of *Leckie*, upon which the State had a mortgage for the security of the payment of the taxes collected by him, had been seized and sold at the suit of his individual creditors.

There was judgment for the State for the sum of $6,988 94, the amount stated in the above mentioned Act, with interest thereon at the rate of five per cent. per annum, from the 16th day of March, 1854, the date of the passage of said Act.

The State appealed, and specially asks that the judgment be amended, and the defendant and his securities be condemned to pay interest at the rate of two per cent. per month on the amount of the judgment, from the 16th of March, 1854, instead of five per cent. allowed by the decree. This suit was pending before and at the date of the passage of the Act of the Legislature of March 16th, 1854, and is mentioned in the fifth section thereof.

It is not disputed, that the Legislature was apprised of the demands contained in the petition, or motion to show cause, filed against the defendant, *Leckie*, and his sureties, and consequently, of the claim of two per cent. per month on the amount of defalcation. It is, indeed, conceded, that the principal of the debt was remitted from the sum of $9,863 90 down to the sum of $6,988 94, together with all interest to the date of the Act; for the interest is only claimed, in argument, from this date.

Remission is a mode of extinguishing obligations, and is conventional when expressly granted to the debtor by the creditor; or is tacit, when the creditor surrenders voluntarily to his debtor the original title under private signature, constituting the obligation. C. C., Arts. 2195, 2196.

If the State had voluntarily surrendered to the defendant his official bond, without the payment of even a part, his obligation and that of his securities under it would have been extinguished for the whole, without *any express agreement to that effect;* and, *a fortiori,* would their obligation have been extinguished, by a voluntary surrender, after a partial payment, for the balance.

In the case at bar, it is declared on the part of the State, not that the bond shall be surrendered to defendant on part payment of the amount due, but that, the bond shall be *cancelled,* on the payment of an amount *less than the sum due;* for it is shown, that defendant and his sureties were indebted to the State *for a much larger sum than* the $6,983 94 specified in the Act of March 16th, 1854. The evidence presents, therefore, the case, not of a *tacit remission of a portion of a debt,* but an *express conventional discharge of such portion;* for the Act declares that the sum of $6,983 94 is the sum due, (although it was less than the sum due,) and that on the payment of the amount thus reduced, the *bond* of defendant and his sureties *should be cancelled.*

This Act of the Legislature can only be considered as one of remission, or liberality, on the part of the State, to the defendant and his securities, and a renunciation of all right to interest at the rate of two per cent. per month, given by the statute. This view is confirmed by the consideration that the interest, at the rate of two per cent. per month, is *in the nature of a penalty,* and is severe and ruinous in its continued monthly impositions, and that its allowance would be totally inconsistent with the liberal intention of the State, plainly manifested by the Act of the Legislature. The judgment is, therefore, correct in rejecting the penal interest of the statute, on the sum of $6,983 94, declared by the Act to be due.

The sureties, as appellants, have filed an answer to the appeal, and prayed that the judgment be entirely reversed, and for one in their favor.

The ground on which they rely for a reversal of the judgment is, that the State has, by the provision contained in the third section of the Act of the 16th of March, 1854, impaired or destroyed their right of recourse upon the property of the principal debtor, for the reason they are required *to be satisfied with the price* at which the debtor's property, on which the State had a mortgage, had been sold, and that the evidence shows a sale of the property under a judgment bearing a judicial mortgage, *subsequent to the mortgage of the State.* If the property of the principal debtor had been sold under the judgment bearing the junior mortgage, *for less than the amount for which the sureties were bound, and they had been thereby injured,* by a *release of the State's mortgage,* the objection would perhaps be well taken; but the evidence shows, and it is not disputed, that on the day the Act of the Legislature was passed, the purchasers of the property owed, on account of its purchase, the sum of $7,155 96, exceeding by $167 02 the amount declared in the first section of the Act to be due on the bond. It is, therefore, evident, that there was nothing in the provision in the third section of the Act, or of its execution, *prejudicial to the rights of the sureties,* and that the objection which they make does not come within the reason of the rule which releases a surety when the creditor has done an act which deprives him of the power of subrogating the surety to all his rights of action, mortgage and privilege against the principal debtor. It is, besides, most apparent from the tenor of the Act itself, that it was not the intention of the Legislature that the State's right of recourse against the sureties, or the recourse of the sureties against the principal debtor, or his property, should be in any wise impaired or destroyed. This ground of objection is, therefore, not tenable.

*M. Ryan,* one of the sureties, pleaded in compensation of the demand against him, a claim for three thousand dollars, alleged to be due him by virtue of a retainer and professional services rendered, in the matter of claims to a large amount, due the State. The attorney representing the plaintiff objected, on the trial, to the introduction of testimony in support of the claim, on the ground, among others, *that it was unliquidated,* and could not be opposed in compensation to the plaintiff's *liquidated demand.* The objection was overruled, the testimony received, and the sum of five hundred dollars allowed the surety on his claim in compensation.

The District Judge erred. The objection to the testimony was well taken under the pleadings. The plaintiff's demand was a *liquidated debt,* and the *unliquidated claim* of the surety could not be opposed in compensation of it. The plaintiff was, besides, the State, and could not be sued by the surety on his claim, either directly or indirectly.

It is, therefore, ordered, adjudged and decreed, that the judgment be avoided and reversed, as far as it decrees to *M. Ryan* the sum of five hundred dollars on his claim in compensation, and the judgment so amended be in other respects affirmed, with costs in both courts.