## MOORE *v.* TATE.

### (*Jackson.*   May  28,  1889.)

1. INTERSTATE LAW.   *State's immunity from suit.*

   Other States are exempt from suit in our Courts, either by original or cross-action, to the same extent as our own State.

2. SET-OFF.   *Not allowed against the State, when.*

   Our statute regulating " set-off and cross-action " has no application to suits brought in our Courts by a State; and the defendant in such action cannot avail himself of a distinct and independent demand, not growing out of or connected with the subject-matter of the original suit, as a defense to the suit.

   Code construed: § 3628 (M. & V.); § 2918 (T. & S.).

   Cases cited and approved: State *v.* Ward, 9 Heis., 111; Tappan *v.* Railroad, 3 Lea, 106; 12 Bush (Ky.), 673; 75 N. C., 1; 30 La. Ann., 541; 2 Dutch. (N. J.), 399; 3 Met., 526; 26 Vt., 486; 34 Md., 344; 10 Tex., 315; 4 Dall. (Penn.), 303; 14 La. Ann., 636; 18 Ala., 767; 3 Rich. (S. C.), 372.

   Cited and disapproved: 81 Ky. Rep., 573; 1 Met., 174; 1 Bay's Rep., 500; 18 Ga., 658.

3. CASE IN JUDGMENT.

   Alabama sued citizens of this State in our Courts, upon a note given in settlement of the penitentiary lease of that State.   The defendants presented, by way of set-off or cross-action, matured coupons for interest due on the bonds of the State of Alabama, which they had duly presented for payment.

   *Held:* That the set-off could not be allowed against the State's demand.

---

### FROM  SHELBY.

---

Appeal  in  error  from  Circuit  Court  of  Shelby County.   L. H. ESTES, J.

HEISKELL & HEISKELL for Moore.

GANTT & PATTERSON for Defendants.

FOLKES, J.    This was an action brought in the Circuit Court of Shelby County to recover of Sam Tate and associates the balance due, after allowing sundry credits, upon the following acceptance:

"MONTGOMERY, ALA., March 28, 1873.

"Sixty days after date, pay to the order of M. G. Moore, Commissioner for the State of Alabama, or order, twenty thousand dollars, at the banking house of Josiah Morris & Co., Montgomery, Ala., for value received, in settlement of the penitentiary lease.    (Signed)    SMITH & McMILLAN.

By WM. SMITH, Ag't.

"Accepted:

"CAMPBELL WALLACE,    W. B. GREENLAW,
"J. W. SLOSS,    M. B. PRICHARD,
"SAM TATE,    M. J. WICKS."

The parties thus accepting the draft composed the firm of "Sam Tate and Associates."

Defendants pleaded nil debit, payment, statute of limitations, and a special plea of set-off, wherein it was alleged that defendants were the owners and holders of certain coupons then due, issued by the State of Alabama to cover semi-annual interest on certain bonds of said State, which coupons, it was alleged, had been presented to said State of Alabama for payment and payment refused, and that the State declined to allow the said coupons as a

credit on said acceptance; that said coupons, with interest thereon at the rate of eight per cent. (the legal rate in Alabama, where said coupons are made payable), exceed the balance due the State of Alabama on the acceptance, after allowing the like rate of interest, wherefore they say that "defendants hereby offer said coupons, and the interest due thereon, as a set-off against plaintiff's demand, and ask that the same be allowed to the extent of the balance due plaintiff; and, by reason of the averments set forth herein, the plaintiff is not entitled, in this action, to any other or further judgment against them except a judgment for the costs of this suit."

The State joined issue on the pleas of *nil debit*, payment, and statute of limitations, but demurred to the set-off or cross-action, and for cause of demurrer set down the following:

"*First.*—That the State of Alabama is not subject to suit, either original or by cross-action.

"*Second.*—The claim sued on is one due the penitentiary of the State of Alabama, contracted with the State in a settlement of a business and commercial transaction, while the set-off is upon coupons from bonds of the State issued by it in its sovereign capacity, and on which the State is not subject to be sued, but for which the holder can look alone to the honor of the State."

There were other grounds of demurrer, which need not be stated.

The Court overruled the demurrer. Plaintiff

interposed additional replications, to which defendants demurred, which, being overruled in part and sustained in part, led to further pleadings, none of which need be mentioned, in the view we have taken of the case.

Such further proceedings were had that the cause came on, finally, to be heard before the Circuit Judge, without the intervention of a jury, when it was made satisfactorily to appear, and it was so adjudged, that there was due the plaintiff on said acceptance, after allowing all credits properly pertaining thereto, a balance of $5,702.97; and that there was due the defendants on matured coupons detached from bonds of the State of Alabama, as alleged in their several pleas of set-off, with interest thereon, the sum of $7,069.39. The final entry, after finding the respective amounts as just stated, continues as follows:

"Thereupon plaintiff moved the Court, notwithstanding the pleas of defendants, to render judgment in favor of the State of Alabama against them for said sum of $5,702.97; and the defendants, on the contrary, insisted that, as it appeared the State of Alabama owed them more than said amount on said matured coupons in their said pleas pleaded as a set-off or counter claim, the plaintiff was only entitled to a judgment for costs, and that said set-off or counter claim should be allowed to the extent of plaintiff's said demand. The Court is pleased to disallow the motion of plaintiff and to allow the defendants said set-off or

counter claim to the extent of plaintiff's demand."

The Court thereupon ordered that the Clerk cancel and surrender to plaintiff's attorney so many of said coupons as would, with interest, amount to the $5,702.97, and to return the remaining coupons to defendants. Judgment was then rendered against defendants for costs only.

From such final judgment plaintiff has appealed in error.

The party for whose use the suit is brought is the real plaintiff; so that the State of Alabama is, to all intents and purposes, the party plaintiff in the action brought to recover judgment on the acceptance set out in the declaration.

While a sovereign State may bring and maintain a suit as any other suitor, she cannot be sued in her own or a foreign Court, unless she has signified her consent thereto, either by statute or by some other unequivocal means.

These universally recognized principles are not challenged by the learned counsel for the defendants, but his contention is that the State of Alabama, having invoked the jurisdiction of the Courts of this State, for the purpose of recovering a judgment against a citizen of Tennessee, must submit itself to the same jurisdiction for the purpose of allowing such citizen to interpose any defense he may have, to the extent of preventing any recovery against him; "that when the State undertakes to litigate with the citizen the latter may, by way of

set-off or counter claim, make such defense as will defeat the recovery, though not entitled to a judgment over against the State, in the absence of some legislative enactment authorizing the recovery."

This contention goes too far. It is true that when the State voluntarily places itself in the position of a suitor, whether in its own Courts or in those of a sister State, it will be held to have laid aside its sovereignty, and to have taken on the .garb of an ordinary suitor, so far as concerns all proper matters of adjudication growing out of the cause of action sued on, and the defendant would be entitled to plead and prove any and all matters properly defensive, including credits and set-offs, so far as the latter are dependent on, connected with, and grew out of the transaction which constitutes the subject-matter of the suit. See *State* v. *Ward & Briggs,* 9 Heis., 111; *Tappan* v. *W. & A. R. R. Co.,* 3 Lea, 106.

Such defenses, though sometimes called set-offs, are not strictly set-offs. "A counter claim is sometimes a mere set-off; sometimes it is in the nature of a cross-action; sometimes it is in respect of a wholly independent transaction. I think the true mode of considering the claim and counter claim is, that they are wholly independent suits, which, for convenience of procedure, are combined in one action," as was said in *Winterfield* v. *Bradmeen,* 3 Q. B. D., 326; Am. & Eng. Ency. of L., Vol. IV., p. 332, and cases cited.

Set-off was unknown to the common law. It was allowed in England by statute, 2 Geo. II., Ch. 22, which has, in the main, been generally adopted in this country.

As introduced into this State by statute, the right of set-off is incidental to, and dependent upon, the fact of the plaintiff having established a right of recovery against the defendant. If this fails the right of set-off does not exist. *Edington* v. *Pickle*, 1 Sneed, 122. Such was the construction given to the Act of 1815, Ch. 53.

It was likewise restricted in its operation to the abatement or extinguishment of the plaintiff's demand, as the case might be. Under the Act of 1852, carried into the Code, § 3632 (M. & V.), where the set-off pleaded by the defendant is found to exceed the claim of the plaintiff, the Court is directed to render judgment in favor of the defendant and against the plaintiff for the excess of the set-off over the plaintiff's demand.

"The plaintiff may, at any time before the jury retires, take a non-suit, or dismiss his action as to any one or more defendants; but if the defendant has pleaded a set-off or counter claim, he may elect to proceed on such counter claim in the capacity of a plaintiff." § 3678 (M. & V.) Code.

In this connection it may be stated that the record in this case shows that when the plaintiff's demurrer to defendant's plea of set-off was overruled, the plaintiff moved to be allowed to dismiss his suit, which was by the Court refused, upon the

defendants electing to proceed, in the capacity of plaintiffs, to have their counter claim adjudged to the extent of plaintiff's demand.

Not being allowed to dismiss unconditionally and absolutely, so as to carry the whole case, the plaintiff, reserving exceptions to the action of the Court, elected to continue the prosecution of its suit.

The statute enacts that mutual demands, held by the defendant against the plaintiff at the time of action brought, and matured when offered, may be pleaded by way of set-off or cross action. Subsec. 1 of § 3628.

To give to the language of this statute a literal meaning would be to allow defendants' contention. But are we authorized to do so? Such reading would also embrace a debt barred by the statute of limitations, a gambling debt, a demand for usury, a *premium pudicitiœ*, any demand *turpi causa* or against public policy. It is manifest that none of these mutual demands are within the meaning of the statute, because they are not enforceable by suit at law.

The evil that the statute was intended to remedy was, that where two persons held separate and disconnected debts against each other, they were driven to the expense and vexation of two separate suits. As the books say, they were "distinct and inextinguishable except by actual payment or release." The statute was intended to dispense with the necessity for two suits, and to permit one suit to settle the whole. It did not give, and was not

intended to give, a right of suit to either party where none existed before, or make other change in rights, but merely to pool the remedies. The mutual demands referred to and provided for were such, and such only, on which separate suits would lie independent of the statute.

In Wait's Actions and Defenses Vol. VII., page 477, it is said: "And it is laid down as a rule that a claim is available in set-off at law only when it is a debt on which the defendant could maintain an action at law against the plaintiff." To this general proposition the author cites numerous authorities, covering a great variety of claims on which suits will not lie at all, or cannot be brought by a defendant in his own name and right. Among the cases cited for the text as above quoted is *Battle* v. *Thompson*, 65 N. C., 406, where it was expressly adjudged that a party sued on a bill single, payable to the public Treasurer, given for cotton sold by such Treasurer, could not plead, by way of set-off to such action, valid coupons taken from the bonds of the State. The judge delivering the opinion says:

"The test of a set-off or counter claim, under the statute, is this: Could the defendant maintain an action against the plaintiff? Tried by this test the defense fails, for a citizen cannot maintain an action against the State."

If our own consideration of the question had not led us to the same conclusion we would be constrained to give much weight to this decision,

in view of the fact that our statutes on the sub-ject are derived from North Carolina as the mother State.

Whether a State should consent to be sued, so as to put itself on an equality with the citizen, is not a matter for the Courts, but for the Legis-lature.

Our own State, for awhile, authorized itself to be sued, but by Act 1865, Ch. 36, § 34, repealed the statute authorizing such suits, which repealing stat-ute was held not obnoxious to any constitutional objections. *Watson* v. *The Bank*, 3 Bax., 395.

The same considerations of public policy which prompted the Legislature to prohibit suits directly against the State would lead the Courts to hold that she should not be sued indirectly, under the general terms of the statute of set-offs, which do not expressly allow such suit.

If such right to plead a set-off exists as against the State by force of the statute (and it cannot exist without the statute as to matters not grow-ing out of and connected with the particular trans-action), then it must necessarily follow that the defendants would be entitled to judgment over for the excess, for the right to judgment for such ex-cess is as much an essence of our statute, as is the right to plead the set-off defensively, since the Act of 1852.

When the defendants here opposed the effort of the plaintiff to take a non-suit, did they not do so under the statute which authorized them to

Moore *v.* Tate.

proceed in the capacity of plaintiffs? If in the capacity of plaintiffs they prosecuted their set-off, are they not suing the State? Does the fact that they only asked to have their claim adjudged to the extent of plaintiff's demand make them any the less plaintiffs, when they hold the State in Court against its will for the purpose of having the set-off adjudged?

The defendants insist that if such were the proper construction to be applied to our own State, it should not be extended to a foreign State, who is permitted to sue, in our own Courts, a citizen of this State; that this is carrying comity too far. It would certainly be but scant courtesy to a sister State to extend to her the privileges of a suitor in our Courts, were we to couple with such privilege burdens which are not incident to such position when not assumed by this State.

It is difficult to anticipate to what excesses such conduct might lead, and to what extent retaliatory measures might be carried.

But apart from such selfish considerations, it is sufficient to say that it is without exception, so far as we know, that the Courts of one State, in dealing with a sister State, extend to it all the privileges enjoyed by the State in which the Court is held, unless there be some imperative rule of law to the contrary.

So that in the consideration of the case at bar we have treated and propose to treat the question as though it concerned the State of Tennessee.

Set-off, as we have seen, not being known to the common law, if it exists as against a sovereign State, must rest upon the statute. If our statute authorizes it at all, it necessarily authorizes it to the full extent given by the statute to private suitors, for there is nothing in its terms to give it a qualified or purely defensive operation; so that in *all cases* where the State might be driven to the necessity of bringing suit against a citizen, such citizen must be allowed to interpose a claim for an independent demand, and after satisfying, it may be, a small demand of the State by the set-off, have judgment over against the State for a large one. In this way the bonded indebtedness of a State, issued in its sovereign and political capacity, predicated entirely upon the faith and credit of the State, to be provided for by the legislative branch of the Government, might be made the subject of suit by such indirection. So, too, every tax payer might discharge his obligations to the Government, in those States where taxes are a personal debt as well as a lien upon the property assessed, to the impoverishment of the State Government.

But it is said that this right of set-off is not applicable to taxes, because of the necessities of Government which require that nothing should stand between the State and its revenues, its life-blood, and that a claim or demand based upon commercial paper or other like evidence of indebtedness stands upon a different footing. If we

were to admit that there is a difference in the character of the debts supposed, it does not follow that the Courts can for themselves declare such difference, in the application of the statutes of set-off, where the statutes themselves make none.

In construing the statutes in question we are to ascertain whether the State is, or is not, within their operation. If not, that is an end of the controversy. If within the statute, where is the authority for the Courts to regulate its scope and application? How, and by what authority are we to say that certain debts of the State are within and others without the operation of the statute?

If we are told that we should apply it to all suits except for revenue, who is to determine, and how are we to say, what demands are "for revenue only?" Are taxes the only sources of revenue? Our own State leases its penitentiary for one hundred thousand dollars a year. Ways and means and appropriations are doubtless predicated as much upon this source of income as upon a like amount of assessed taxes. What is the principle, and what the rule, upon which the Courts are to refuse a set-off in a suit for assessed taxes, and allow it in a suit for rent due under the penitentiary lease?

Illustrations might be multiplied of the sources of income to the State, and of the difficulty of determining whether they are to be considered as revenue.

That set-off against taxes due the government will not be allowed has been held in the following

cases: *Newport Bridge Company* v. *Douglass,* 12 Bush. (Ky.), 673; *Cobb* v. *Elizabeth City,* 75 N. C., 1; *City of New Orleans* v. *Davidson,* 30 La. Ann., 541–554; 2 Dutch (N. J.), 399; 3 Metc., 526; 26 Vt., 486.

The case of *State* v. *Franklin Bank,* 10 Ohio, 91, referred to by counsel for defendants, was an agreed case, where the State, by its attorney, consented to try the question of set-off to the claim for taxes.

That the immunity from suit possessed by the State, as a prerogative of its sovereignty, applies to a cross-action by set-off, unless expressly provided otherwise by statute, is fully sustained by the following adjudications, which we have examined: *State* v. *B. & O. R. R.,* 34 Md., 344; *Chevallier's Admr.* v. *State,* 10 Tex., 315; *Commonwealth* v. *Matlock,* 4 Dall. (Penn.), 303; *State* v. *Leckie,* 14 La. Ann., 636; *White* v. *The Governor* 18 Ala., 767; *Treasurer* v. *Cleary,* 3 Rich. (S. C.), 372. This last case virtually overrules, without referring to, the Gaillard case in 1 Bay, cited by defendant's counsel.

Counsel for defendants press upon us certain cases which they insist sustain their contention. We have examined them all, together with others not referred to, and while the argument in some of them does go to the extent claimed for them, they are found, so far as the point decided is concerned, to be bottomed upon the United States statute, so far as they have any solid support. Let us now glance briefly at these cases:

*Schaumburg* v. *United States*, 103 U. S., 667, is merely an affirmance of the case of *United States* v. *Eckford*, 6 Wall., 484. The latter case shows clearly that "this is a question which arises ex-- clusively under the Acts of Congress, and no local law or usage can have any influence upon it." Again, in this case it is said:

"No action of any kind could be sustained against the Government for any supposed debt, un- less by its own consent; and that to permit a demand in set-off to become the foundation of a judgment would be the same thing as sustaining the prosecution of a suit."

This was a case where, after allowing credits to the extent of the Government's demand (which was permissible, as we have seen, independent of statute, where the credits grew out of the Gov- ernment's demand, and which was allowable under the United States statute to the *extent of the de- mand*, independent of origin of the credits), the Circuit Court had rendered judgment for the ex- cess due by the Government. The action of the Circuit Judge was sought to be justified by the State statute of New York, which authorized such judgment for the excess. The Supreme Court held that the State statute could not confer jurisdiction to render such a judgment—it was not a question of practice, but of jurisdiction; and its action in allowing the set-off to be pleaded, even defensively, to the extent of the Government's demand, is placed upon the Act of Congress. The Judge de-

livering the opinion used this language: "When the United States is plaintiff, and the defendant has pleaded a set-off, *which the Acts of Congress have authorized him to do*, no judgment can be rendered against the Government," although there is an excess due the defendant. (The italics are ours.) The Act of Congress referred to is that of March 3, 1797, Ch. 74, Secs. 3 and 4. 1 Stat. at Large, 515.

It is said in the 18 Georgia case, which will be presently noticed, that this Act of Congress does not grant any power, or right, to plead a credit or set-off, but merely restricts a right already existing.

That such is not the view of the Supreme Court of the United States—the Court of last resort as to construction of Acts of Congress—is shown by their language in this case of *United States* v. *Eckford.* After citing and giving the substance of the Act of March 3, 1797, the Judge delivering the opinion says: "The extent of the *authority conferred* by that section is as plain as any *grant of power* can well be, which is *conferred* in clear and unambiguous language." Page 489.

To the same effect is *United States* v. *Robeson*, 9 Peters, 319; *United States* v. *Giles*, 9 Cranch, 212, both of which cases show that but for the statute in question, no set-off, even defensively, would be allowed against the government. See also *United States* v. *Wilkins*, 6 Wheat, 135.

The case of the Siren, 7 Wall., 154, stands upon

the idea that while the vessel itself could not be proceeded against by one holding a maritime claim so long as she was in the possession of the Government, yet, when the vessel is sold, and the proceeds are in the registry of the Court, such funds will be distributed by the Court according to priorities as they exist under admiralty laws.

Hence it was that the owners of a vessel and cargo, that had been sunk by the carelessness of the prize crew in charge of the Siren, were allowed compensation out of the funds realized by the sale of the prize. The decision clearly recognizes that the claim for such damages could not be made against a vessel of the United States, and the disposition of the case rests largely upon the analogy to the assumed liability of Government property for salvage, or general average contribution.

At all events, there is nothing in this case that stands in the way of the conclusions we have reached in the case at bar. And it must be admitted that there is a good deal of force in the suggestion of the dissenting Judge, that "there is certainly some difficulty in distinguishing between a proceeding against the fund in the registry and a proceeding against the vessel itself," although his quarrel with the opinion of the majority was upon another ground.

In *United States* v. *Mann*, 2 Brock., 9, though the learned Judge discusses at length the inherent right and justice of a claim of set-off, he finally rests the decision upon the Act of Congress already

referred to. It is needless to refer specially to any of the other cases from the Federal Courts, as they will be found to rest upon the Act of Congress in question.

In *The Commonwealth* v. *The Owensboro & Nashville Railroad Company*, 81 Ky. Rep., 573, the Court does say that "when the State undertakes to litigate with the citizen, the latter may, by way of set-off or counter claim, make such defense as will defeat the recovery, but is not entitled to a judgment over against the State, in the absence of some legislative enactment authorizing the recovery." This is the language of defendant's contention. It is sufficient to say of this case that it contains no discussion of the question—it cites no authority. It was a suit for taxes, and it was adjudged that no taxes were due. So that at best it is a *dictum* merely.

Again, in *Sinking Fund Commissioners* v. *Northern Bank of Kentucky*, 1 Met., 174, the announcement was equally uncalled for, for the reason that the suit was not by the State, but by a corporation created by the State, subject to sue and be sued. Even if the suit had been by the State, the set-off interposed was that of an incumbrance on the property bought by the defendant. It grew out of the same transaction, and would have been admissible in our State under the doctrine to be found in *State* v. *Ward & Biggs*, 9 Heis., 111, *supra.*

*State* v. *Gaillard*, 1 Bay's Rep., 500. This case

is extremely brief, and seems to rest upon an amercement act which it is impossible to understand from the meager reference to it in the opinion; no discussion, and no authority cited. It is virtually a set-off allowed against a tax, however, and is therefore unsustainable on any ground short of a direct statute.

*Abner P. Powers* v. *The Central Bank*, 18 Ga. Rep., 658, it must be admitted, goes to the full length claimed by the counsel for defendants. It is, however, involved in this dilemma: After referring to some of the Federal Court cases where set-offs were allowed, it says that it might be supposed that they rested upon the Act of Congress of 1797, and it undertakes then to say that "this Act gives no right whatever to plead a set-off or use any discount, but regulates and restrains a right as already existing," while the case closes with this language: "If we might presume so far, we would respectfully recommend the passage of a law by our State Legislature, *substantially the same as the Act of* 1797, *expressly allowing* to defendants, when sued by the State, the privilege of pleading, by way of set-off or discount, any demand, legal or equitable, which they might have or hold in their own right against the State, provided no judgment be rendered for any excess," etc.

Somewhat illogical is the suggestion that the Legislature should pass an Act "substantially the same as the Act of 1797, expressly allowing set-off," when the argument leading to the decision had as-

sumed that the Act in question gave no right whatever, but merely limited a right already existing independent of the statute.

The earnestness and ability of counsel for defendants, who were successful in the Court below, and the importance of the question, which is for the first time presented for adjudication in this State, must be our excuse for reviewing the authorities cited, when our own conclusions had already been reached with confidence and satisfaction, at least to ourselves, and when principle and authority were ample in our support.

As has been said, "it is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own Courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant in a suit by individuals. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and may withdraw or withhold its consent whenever it may appear that justice to the public requires it." *Burr* v. *Arkansas*, 20 How. (U. S.), 529.

Where and how can it be said that the State of Alabama has consented to be sued on the coupons declared on in the plea of set-off here? The only answer vouchsafed is that by voluntarily bringing her suit against the citizen, she thereby signi-

fies her consent to the cross-action. The logic of which is that she can never maintain her action against a recalcitrant debtor without, at the same time, exposing herself to the hazard of being met and overwhelmed with the presentation of her outstanding securities which the exigencies of the Government may have rendered it necessary to withhold payment of, in whole or in part, temporarily or otherwise; and all this upon the construction of a statute which does not in terms apply, and was manifestly never intended to apply to the sovereign.

But, without further discussion, we hold that an independent claim cannot be set-off against a demand of the State, defensively or otherwise, without the affirmative consent of the State, and that the Courts of this State will apply to a sister State sueing here the same rule in this respect that is applicable to our own State when a plaintiff.

It follows, therefore, that the judgment of the Circuit Judge must be reversed, and judgment rendered here for the full amount of the balance due on the acceptance sued on, as ascertained in the judgment of the Court below, with interest and costs.