SCATES *v.* BOARD OF COM'RS OF UNION CITY.

(*Jackson,* April Term, 1953.)

Opinion filed February 11, 1954.

Rehearing denied March 3, 1954.

C. W. MILES, III, and MILES & MILES, all of Union City, for plaintiff in error.

PAUL G. HUDGINS, of Union City, for defendant in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court..

An automobile belonging to the municipality of Union City, Tennessee, while being driven over the streets of that town, came into collision with an automobile belonging to plaintiff-in-error, Charles Scates. The Board of Commissioners of Union City, being of the opinion that the collision was due to the negligence of Scates, brought suit against Scates to obtain a judgment for the damage done to the automobile. Scates was of the opinion that the collision was brought about by the negligence of the driver of the city's automobile. Hence, he filed a cross-declaration, Code Section 8745, to obtain a judgment against Union City for the damage done to his automobile.

The pleadings disclosed it to be a fact that at the time of the collision this automobile of Union City was being used by the municipality in the exercise of a governmental function, as distinguished from a proprietary function. Therefore, the City demurred to the cross-declaration on the ground that it, the City, was immune from suit in this matter. From the action of the Court

sustaining the demurrer and dismissing his cross-declaration Scates has appealed.

Mr. Scates' insistence is that Union City waived its governmental immunity by suing him. Specifically, his insistence is that "when a sovereign sues in our courts to enforce a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter and so submits itself to the jurisdiction it has invoked that defenses by way of set-off and of counter-claim are available against it".

In support of his insistence, Scates cites several decisions of our Federal Courts, including decisions of the United States Supreme Court. However, in as much as the question stated is one as to the public policy of the sovereign affected, the answer to that queston must be determined by the Constitution and statutes, if any, and decisions of that sovereign, to wit, Tennessee.

Article I, Sec. 17 of the Tennessee Constitution provides that "Suits may. be brought against the State in such manner and in such courts as the Legislature may by law direct." This constitutional provision "carries with it a positive implication that they shall not be brought otherwise or at all unless legislative authority therefor be affirmatively given". *Insurance Co.* v. *Craig,* 106 Tenn. 621, 629, 62 S. W. 155, 157, and means that the State cannot be subjected to litigation at the suit of an individual unless there is a statute clearly and unmistakably disclosing an intent upon the part of the Legislature to permit such litigation. *Quinton* v. *Board of Claims,* 165 Tenn. 201, 214-215, 54 S. W. (2d) 953. Tennessee has no statute permitting suit against it for the negligence of its agents or officers.

A municipality is only an agent of the State when it is exercising a governmental function. Therefore, in

the exercise of such a function, it has the same immunity from suit as does the State. *Combs* v. *City of Elizabethton,* 161 Tenn. 363, 365, 31 S. W. (2d) 691.

Since the immunity of the municipality, as an arm of the State, can be waived only by authority of the Legislature it necessarily follows that, in the absence of a legislative enactment, the officials of a municipality have no authority to directly waive such immunity. May such officials waive it as to a particular individual with reference to a particular incident by bringing suit to recover a judgment against that individual because of that particular incident? In short, can the municipal officials do indirectly that which they are not permitted to do directly? On principle, it would seem that such officials have no such authority.

In *Moore* v. *Tate,* 87 Tenn. 725, 11 S. W. 935, suit was brought for the State of Alabama to recover a judgment on an alleged indebtedness. The defendant sought to take advantage of the statute permitting the set-off plea. Alabama demurred to that plea on the ground that it, as a State, " 'is not subject to suit, either original or by cross-action.' " This Court sustained that demurrer, saying: "The same considerations of public policy which prompted the legislature to prohibit suits directly against the state would lead the courts to hold that she should not be sued indirectly, under the general terms of the statute of set-offs, which do not expressly allow such suits." The statute permitting the filing of a cross-declaration does not expressly or by implication waive the immunity of the State or the immunity of an arm of the State from suit. The instant case falls, therefore, within the authority of *Moore* v. *Tate,* supra, and necessitates

on precedent, as well as on principle, an affirmance of the judgment of the Circuit Court.

The judgment sustaining the demurrer and dismissing the cross-declaration will be affirmed with costs adjudged against the plaintiff in error and his surety.

## ON PETITION TO REHEAR.

Speaking plainly, a "mighty" fine, strong and spirited petition to rehear has been filed in behalf of Scates, wherein the first insistence made is that this Court entirely misinterpreted *Moore* v. *Tate,* supra.

It is asserted that *Moore* v. *Tate,* properly construed, supports the insistence that Scates is entitled to maintain his cross action, because it "arose out of the very transaction which is the subject of the lawsuit". In support of that insistence, petitioner quotes extensively from page 730 of 87 Tenn., page 936 of 11 S. W. of *Moore* v. *Tate.* The burden of the quotation is that when the State institutes suit it thereby puts aside its sovereignty to the extent that "the defendant would be entitled to plead and prove any and all matters *properly defensive,* including credits and set-offs, so far as the latter are dependent on, connected with, and grew out of, the transaction which constitutes the subject matter of the suit." (Emphasis supplied.)

The petition asserts that the language above quoted from *Moore* v. *Tate* is authority for the proposition that Scates may maintain this counter-suit against the City for a tort committed while acting in its sovereign capacity. We are constrained to conclude that counsel, in so insisting, may have inadvertently overlooked the expression "properly defensive" in the quotation above stated. Interposing proximate contributory negligence as a de-

fense is quite a different matter from maintaining a cross-action to recover from the sovereign for an alleged tort.

The petition next says that this Court's opinion in this case "is the first, so far as we have been able to learn, that predicated the governmental immunity of a municipal corporation upon the constitution", and that "the present case is the only one in the judicial history of this state based upon the constitution * * *." Petitioner is referring to the consideration in the opinion of Article 1, Sec. 17. Perhaps our opinion did not make clear the reasons for our statements with reference to the applicability of this provision of our Constitution.

*McAndrews* v. *Hamilton County,* 105 Tenn. 398, 404-405, 58 S. W. 483, 484, states five reasons why a county, while acting in a governmental capacity, is not liable in tort for negligent acts. Two of those reasons are stated as follows:—"(3) that it is a subordinate political or governmental division of the state; * * * (5) That counties are instrumentalities of government, and partake of the immunities of states while acting in a governmental capacity." Article 1, Sec. 17 forbids the institution of suits against the State in the absence of a statute expressly so permitting. It would seem to logically follow, we thought, that this constitutional provision would apply to a county acting in its governmental capacity if it be a fact, as our cases hold, that in such a situation counties "partake of the immunities of states while acting in a governmental capacity", and also since they are, in such capacity, only a "governmental division of the state".

Of course, the same rule would apply to a municipality while acting as a governmental entity. "But in so far as purely governmental powers are concerned, and in

respect to the general administration of the general law of the state, and in respect to all duties which are essentially public, and not local and special, they (municipalities) are deemed to be agencies of the sovereign power, and not subject to be sued for the torts of their agents or officers, unless by statute an action is given." *Davis* v. *Knoxville,* 90 Tenn. 599, 602, 18 S. W. 254.

This Court, in *Williams* v. *Taxing District,* 84 Tenn. 531, 534, apparently took the same view as to the applicability of Article 1, Sec. 17, as this Court did in the case at bar. In discussing Article 1, Sec. 17, and in connection with tort liabilities of counties, this Court there said:

"Suits may be brought against the State in such manner and in such courts as the Legislature may, by law, direct. It will be noticed on the fact of this section of the Constitution, that, notwithstanding the generality of the language touching a man's remedy for an injury to his person, reputation or property, yet there is a class of injuries for which there is no remedy unless the Legislature shall so direct by law, namely, injuries inflicted by the State. Until the Legislature chose to legislate on the subject there was no redress in the courts: *Williams* v. *Register,* Cooke 214. And the redress or remedy thus given might be repealed at any time: *State* v. *The Bank of Tennessee,* 3 Baxt. 395. A Constitution, moreover, must be understood and construed in the light and by the assistance of the common law, and with the fact in view that its rules are still left in force. The Constitution is not the beginning of law for the State, but it assumes the existence of a well understood system, which is to remain in force and be administered, under such limitations and restrictions

as that instrument imposes. Cooley Const. Lim., 74. *People* v. *Draper,* 15 N. Y. [532] 537; *Pope* v. *Phifer,* 3 Heisk. 682. ''By the common law, the citizen had no remedy against a county for an injury caused by the neglect of the county to keep the public roads in good repair.'' 84 Tenn. at page 534-535.

That just quoted would, of necessity, apply to a City, as well as a county, when the city is acting in its governmental capacity.

However, the disagreement between this Court and petitioner as to the application of Article 1, Sec. 17 to the case at bar is academic and immaterial. Petitioner concedes that with reference to torts committed by agents or servants of cities in the exercise of a governmental function ''the common law gives no such action, and it is, therefore, not sustainable at all unless given by statute.'' *White's Creek Turnpike Co.* v. *Davidson County,* 82 Tenn. 73, 74. The Court was dealing there with a county but the law is, of course, the same as to a City. There is no statute permitting such a suit against a City. Hence, whether Article 1, Sec. 17, is, or not, applicable, the result is the same. The City is immune.

Perhaps what has just been said disposes of the point sought to be made in the petition by reason of the fact that a suit may be maintained against a municipal corporation, acting in a governmental capacity, in a nuisance case. Therefore, this observation of the petition will not be noticed further than to observe that ''the state has not authorized (a county or city) to commit a nuisance, because such an act is not an attribute of sovereignty.'' *Chandler* v. *Davidson County,* 142 Tenn. 265, 273, 218 S. W. 222, 224, and opinions since overruled on other grounds. *Buckholtz* v. *Hamilton County,* 180 Tenn. 263, 267, 174 S. W. (2d) 455.

Next it is said in the petition that ''We presume this Court will take judicial knowledge of'' the private act which is the Charter of Union City, and that this Charter provides that the City may ''sue and be sued, plead and be impleaded in all courts of law and equity and in all actions whatever.'' As said in the petition, this is the first reference in this case to the charter of Union City. The petition drops the subject after making the above observation. The purpose of the observation is not apparent unless it be intended as an insistence that Union City may be sued by reason of its charter provisions for the results of a negligent act committed while acting in a governmental capacity. If that be the purpose in referring to this charter provision and, if it is thought to have that legal effect, then have not all of us wasted a lot of time and effort in seeking to determine the question made independent of that charter provision?

If the charter provision in question meant what we take the petition to rehear implies there would be applicable that holding in *Williams* v. *Taxing District,* 84 Tenn. 531, 537-538 that

''and it is very true that a provision of a municipal charter, which undertakes to make a law for, or in regard to, that municipality different from the general law, or to withdraw from the operation of a general law, applicable to all municipal corporations, a particular corporation, or class of such corporations, would be obnoxious to the clause of the Constitution last cited, because not the law of the land.''

Finally, it is said that ''the whole doctrine of governmental immunity from liability for torts rests upon a rotten foundation''. Instead of taking issue with

petitioner on that statement, we simply remind him that the governmental immunity rule is entirely too well established by consistent adherence thereto throughout the history of our State to admit now of repeal thereof by the judiciary, rather than the legislature, because the rule does not meet our personal notion of what is justice.

Let the petition to rehear be denied.