STATE OF TENNESSEE ex rel. D. W. MOULTON, Commissioner of Highways of the State of Tennessee, etc.

*v.*

R. A. WILLIAMS et ux, etc.

(*Knoxville,* September Term, 1960.)

Opinion filed March 10, 1961.

JAMES M. GLASGOW, Assistant Attorney General, Mc-DAVID & LOCKETT, Harriman, for appellants.

ARTHUR M. FOWLER, Loudon, M. G. GOODWIN, Lenoir City, for appellees.

MR. JUSTICE BURNETT, delivered the opinion of the Court.

This suit was begun by a bill for an injunction being filed by the Commissioner of Highways of the State of Tennessee for injunctive relief wherein a temporary injunction was granted enjoining the appellees, Williams et ux., from cutting a fence crossing over an interstate highway. The bill was answered and coupled with this answer was a cross-bill in which appellees sought in effect to enjoin the Commissioner of Highways from maintaining this fence along this interstate highway and requiring the Commissioner of Highways to build another access road for the appellees over to another road so their children could go to school, they could go to their mailbox, and things of that kind. The appellees filed a motion to modify the injunction and this motion was argued on bill and answer and cross-bill, and the Chancellor modified the temporary injunction so as to allow the appellees to cross this super-highway where a road had formerly crossed and to prevent the Commissioner of Highways from erecting a fence across this property. A demurrer

was also filed by the Commissioner as to the cross-bill filed herein which was overruled and a discretionary appeal allowed. There was no appeal allowed from the modification of the temporary injunction, and the Commissioner filed a petition for certiorari and supersedeas which was granted by a member of this Court, and the matter was set for hearing.

It has been heard and we, after an extensive study and investigation of the question, now have the matter for disposition.

■ In the first place, we think the certiorari and supersedeas were properly granted under the authority of the *City of Nashville v. Dad's Auto Accessories,* 154 Tenn. 194, 285 S.W. 52, because this Court has such power and authority whenever an inferior tribunal exercising a judicial function has exceeded its jurisdiction, or is acting illegally. For reasons hereinafter set forth we are satisfied that the Chancellor in the exercise of his judicial functions herein has exceeded his jurisdiction.

■ The bill alleged that the Department of Highways of the State of Tennessee had commenced construction of the interstate highway project in Loudon County and that prior to the commencement of this construction it had acquired a portion of land over which the highway was laid out in fee simple by warranty deeds and that part of the property described in these deeds was to be used for the construction of a controlled access highway. Our statute (Section 54-2001 et seq., T.C.A.) contemplates that these controlled access highways shall be and it is specifically provided that the State's right-of-way must be owned in fee simple. This statute was passed and is used in conjunction with the Federal authorities and is

interpreted along with Federal laws, which were enacted in 1956, creating an interstate system of limited-access highways. Public Law 85-767, Aug. 27, 1958, 72 Statute at Large, 895; 23 U.S.C.A., sec. 111.

Our statute (Section 54-2003, T.C.A.) places the discretion and the right to locate these highways in the highway authorities of the State and to design any controlled access facility and to prohibit access so as to best serve the traffic for which such facility is intended, "and its determination of such design shall be final." This same Section provides that, "No person shall have any right of ingress or egress to, from or across controlled access facilities to or from abutting lands, except at such designated points at which access may be permitted, upon such terms and conditions as may be specified from time to time." Thus under this authority the Commissioner caused a fence to be erected along the north boundary line of this highway project as provided for in the plans and specifications for the purpose of controlling ingress and egress from the highway project. After this fence was constructed the appellees, Williams and wife, trespassed upon this limited access way, crossing over the fence and on two occasions cutting the fence. Thus the bill was filed by the Commissioner to prohibit what it termed was an unauthorized trespass upon this highway. It was on these allegations that the temporary injunction heretofore spoken of was granted.

The Supreme Court of Arkansas in *Arkansas State Highway Commission v. Union Planters Nat. Bank,* as reported in 333 S.W.2d 904, 906, described these highways thus: "A controlled-access facility may be broadly described as a superhighway which motorists can enter

and leave only at designated interchanges, usually some miles apart.''

Such a limited-access highway, as this is, is designed particularly for movement of through traffic, upon which cross traffic must be eliminated or severely curtailed, and entrances and exits must be strictly controlled so that abutting land owners have no easement or right of access different from that enjoyed by the public in general. We will take judicial knowledge of the fact that such highways are being constructed now from one end of the country to the other and that in certain sections of the country such highways are designated as ''freeways'', ''throughways'', ''expressways'', ''parkways'' or ''belt-lines'', and are essential to the public welfare and progress of the country. We doubt that this statement can be seriously controverted. The courts wtihout exception have thus held that it is the right of those of the State and Federal governments in constructing such highways to control these access facility roads for entrances or for crossing these highways, because otherwise they would become so dangerous to life and property that it would be impossible to control this facility. The mere fact of controlling these entrances and exits at certain places is for the public welfare and safety of the traveling as well as the pedestrian public.

The right to do the last indicated above, the control of these access facilities, is inferentially contradicted herein by the answer and cross-bill of the appellees and by their actions in cutting the fence and using, or attempting to use, this facility contrary to the directions of the Commissioner of Highways.

It is argued that the property of the appellees was situated on a road adjoining and below the property

acquired in fee by the State to construct this highway and that this road which their property was on led into a road which crossed this super-highway at the point where these properties were acquired in fee by the State, and since the State through its Commissioner did not condemn the property of these appellees, that then these appellees still have the right to use this same passageway through this property so that they will have a shorter distance to walk to the mail box, or for their children to catch a schoolbus and for doctors to come across when there is sickness in the family. One of the allegations is that the reason the fence was cut by the appellees was so that a doctor might come to their home.

By acquiring this property and not acquiring that of the appellees, or sufficiently compensating the appellees for the right taken away from them by reason of building this super-highway, the appellees have lost no rights, because they still have their right to institute a suit against the county under a reverse condemnation proceeding as is provided by Section 23-1423, and 1424, T.C.A., and recover from the county any damages to which they would be entitled by reason of the State closing up this old road to which they claimed that they had the right to use in crossing this super-highway. Thus it is that the State is not depriving these people of anything that would not respond in damages as indicated last above. *Brooksbank v. Leech,* 206 Tenn. 176, 332 S.W.2d 210; and *Fritts v. Leech,* 201 Tenn. 18, 296 S.W.2d 834. On February 9, 1960, this Court released an opinion for publication in the Brooksbank case wherein Brooksbank sued Roane County for damages when a road he claimed as an access road had not been condemned by the State. This Court held that such a suit was maintainable and

that it was not barred by the statute of limitations since he had made the county a party within the time and a non-suit had been taken for the purpose of determining certain legal questions in *Brooksbank v. Leech*, supra.

We cite these things and say what we have said for the purpose of showing that the appellees have lost no rights for which they could not be compensated.

It cannot be controverted, and is not controverted, that the State under statutory authority may take the property for the building of highways and may do so without the consent of the party, so long as the State has statutory authority for the taking and that the rights of those whose property is taken is protected in that their rights respond in damages which eventually is paid by the State as shown by *Brooksbank v. Leech*, supra, and authorities therein cited.

The above statement of applicable principles can be applied to the situation herein, being the principles the Chancellor should have followed, and he thus should have granted to the Commissioner a permanent injunction enjoining the appellees from cutting the fence and crossing this highway in the particulars complained of by the Commissioner. Our Legislature many years ago probably contemplated some such situation when Section 54-507, T.C.A., was enacted authorizing the directing of injunctions against interference by parties in the construction of State highways.

In the answer to the cross-bill herein a letter from one of the engineers of the Highway Department to the appellees is made a part thereof and it is sought to show by this letter that the Highway Commissioner is estopped from the action that is taken herein in fencing this super-

highway, because this engineer in effect promised these appellees to get them another way out over another road. This recognition of this engineer was merely a means sought to mitigate the liability of the State, which might be enjoyed by the appellees for thus taking their right where it formerly was before the building of this super-highway. It is not unusual for the Department of Highways to build underpasses under a right-of-way where livestock can be moved from one side to another when the right-of-way cuts the farm, or to make grade crossings and things of that kind. All this amounts to though is merely an effort on the part of the Highway Department to mitigate the damages which would otherwise follow from a suit of reverse condemnation, as such a suit herein would have to be since the rights of the appellees were not condemned. The appellees' rights would be for property not condemned because their property did not abut the land acquired by the Commissioner for highway purposes. There is a very well annotated note in 43 A.L. R.2d, beginning at page 1072, citing authorities from many states in reference to abutting owners' rights to damages where they have lost access because of these limited access highways. We cite this merely for the information of counsel in pursuing this subject.

We have said above that the rights of the Commis-sioner of Highways to lay out these projects, provide these access ways and fence them is purely a discretion-ary matter with him and when he does so the Court is without jurisdiction, power or authority to review his decision locating and constructing these limited access highways, or to require that the Commissioner build an access way in such a manner as he does not deem best. This is purely a discretionary matter with the Commis-

sioner. Section 54-510, T.C.A.; Section 54-540 and Section 54-2001 et seq., T.C.A.; *Liles v. Creveling,* 151 Tenn. 61, 268 S.W. 625; *Department of Highways v. Stepp,* 150 Tenn. 682, 266 S.W. 776, 777.

The Court said in the Stepp case:

"When the power was delegated to these agents, and they exercised it in the manner prescribed by law, for the purpose of acquiring the right of way for the public road, the landowner could not challenge the power to take for public use, nor contest such questions as the utility of the improvement, the choice of the route, and the necessity for taking, because these are legislative questions which the courts cannot review."

This has been the rule since the beginning of the State.

Then, as to the basis of the allegations in the crossbill that one of the engineers for the Department agreed to acquire another right-of-way for the appellees, this Court in the Creveling case, supra, answered the question in these words (151 Tenn. 61, 268 S.W. 626):

"Under these authorities highway commissioners could not make a contract as to the location of a road that would be binding upon themselves or their successors in a case where it later appeared that a deviation from the route agreed upon was required by the public welfare. Any such contract is made subject to the right of the State to withdraw from it when the public safety so requires."

Thus we must assume that any such promise that this engineer made, which has not been fulfilled, the Commissioner decided that the public welfare required that something else be done and that the appellee be left

to their rights under a reverse condemnation proceeding as heretofore referred to. Under the same authority (the Creveling case) this Court held that estoppel *in pais* cannot be invoked as against the public interest, nor to defeat the police power. This same principle applies here. The courts, too, have held that the doctrine of estoppel generally does not apply to the acts of public agents and should not be held ever to apply to a mere employee or servant as contended for in this cross-bill. *State ex rel. Dossett v. Obion County,* 188 Tenn. 538, 221 S.W.2d 705.

It is the contention of the appellees that the Commissioner and the State having initiated this action for injunctive relief that then they have a right to come in and file this cross-bill and have relief thereunder. As authority therefor they cite *Moore v. Tate,* 87 Tenn. 725, 11 S.W. 935, 10 Am.St. Rep. 712, and *Jackson County v. McGlasson,* 167 Tenn. 311, 69 S.W.2d 887. Those authorities though are not authority for the proposition herein contended for. In the Jackson County case the Assistant Attorney General of the State consented to the jurisdiction therein by voluntarily entering his appearance, and by an agreement which is copied in the opinion. The Court then based its conclusion that the State must be just like any other suitor and cited as authority the Moore case, supra. The Moore case involved the question of a plea of set-off on certain Alabama bonds and in no sense of the word is it authority for the contention of the appellees herein. All that was held in the Moore case is that [87 Tenn. 725, 11 S.W. 936] ''so far as concerns all proper matters of adjudication growing out of the cause of action sued on, and the defendant would be entitled to plead and prove any and all matters properly defensive, including

credits and set-offs, so far as the latter are dependent on, connected with, and grew out of the transaction which constitutes the subject-matter of the suit.'' The Court went on to say in the Moore case that ''Whether a state should consent to be sued so as to put itself on an equality with the citizen, is not a matter for the Courts, but for the Legislature.''

In the instant case the State through its action in no wise consents to be sued, all the State is doing is enjoining an illegal act on the part of the appellees as heretofore shown. By this cross-bill the appellees seek affirmative relief which in effect in the end if granted would reach the funds in the treasury of the property in the possession of the State. Such cannot be done. Article 1, Section 17, Constitution of Tennessee; Section 20-1702, T.C.A.; *Moore v. Tate,* supra; and *Scates v. Board of Commissioners,* 196 Tenn. 274, 265 S.W.2d 563.

Obviously, from what has been said above, any wrongs done the appellees by the Department of Highways by reason of its exercising its right of condemnation would have to be corrected under a reverse condemnation action as above discussed. The courts of this State, and others so far as we know, have frequently held and commented on the fact that in these condemnation suits a court of equity does not have jurisdiction but jurisdiction for remedying these wrongs and fixing the rights of those wronged is in the law court. *Hombra v. Smith,* 159 Tenn. 308, 17 S.W.2d 921.

By reason of the modification of the injunction herein to allow the appellees the use of this super-highway by cutting the fence and keeping their right to cross where the Commissioner forbade is in effect granting to the

appellees an extraordinary relief wherein the courts of chancery do not have jurisdiction. *Fritts v. Leech,* supra; *Darwin v. Town of Cookeville,* 170 Tenn. 508, 97 S.W.2d 838. These cases and others point out with reason that chancery courts will not grant extraordinary relief nor entertain suits where the sole issue is relief to which the landowner is entitled for the taking of his private lands for highway purposes, which rights are determined by the law court.

For the reasons above expressed the decree of the Chancellor is reversed and an order may be entered granting a permanent injunction as prayed for in the original bill. The demurrer to the cross-bill is sustained and that action dismissed. The costs of the cause are taxed to the appellees.