J. D. LEE et al.

v.

CITY OF CHATTANOOGA.

Court of Appeals of Tennessee,
Eastern Section.

July 24, 1973.

Certiorari Denied by Supreme Court
Nov. 5, 1973.

**918**

Tanner & Jahn, Chattanooga, for J. D. Lee and others, appellees and cross-appellants.

Stophel, Caldwell & Heggie, John R. Seymour and Roger W. Dickson, of counsel, amicus curiae.

Eugene N. Collins, City Atty. of the City of Chattanooga, for appellants and cross-appellees, City of Chattanooga, and others.

## OPINION

McAMIS, Special Judge.

This case involves the question of the effect of three annexation ordinances of the City of Chattanooga passed pursuant to T.C.A. § 6–303, et seq.

The basic and underlying questions are: (1) Can a municipality contract its territorial boundaries otherwise than under the provisions of T.C.A. § 6–304, with particular reference to territory theretofore annexed pursuant to T.C.A. § 6–303, et seq., unchallenged by quo warranto filed within thirty (30) days and prosecuted to final judgment; (2) Can such municipality having finally passed such annexation ordinance "de-annex" such territory by resolution after the lapse of thirty (30) days; (3) Can the municipality be compelled to repay to taxpayers residing in such annexed territory taxes paid under the assumption said taxes would be based upon the "services" furnished residents of such territory or must they pay taxes at the same rate as other residents of the City?

The Chancellor held the residents of such territory could challenge the annexation ordinance many months after an agreed order had been entered in a quo warranto proceeding, among other things dismissing the quo warranto proceeding, the terms of which order will be adverted to hereinafter. The Chancellor also held the annexation was never carried out but was "abandoned" by the resolution above mentioned, and that "annexation by ordinance cannot be validly compromised." The result of this holding is that such annexed territory was not a part of the municipality of Chattanooga. The Chancellor held, however, that there could be no differentiation in the rate of taxation between such residents or property owners and the legally established tax rate for taxpayers within the original boundaries of the City and denied them the right to recover taxes paid the City.

Both parties have appealed.

After the case reached this Court, upon motion, certain persons desiring to remain in the City under the annexation ordinances were permitted to file a brief and present oral argument as amicus curiae.

It should be stated at the outset that this is not a quo warranto proceeding. Separate bills were filed by certain residents of three contiguous suburbs of Chattanooga, East Brainerd, Tyner and Lake Hills-Murray Hills to have a decree holding the annexation proceedings as to each of the

areas involved declared void and of no effect and to enjoin the City of Chattanooga and its Board of Commissioners from collecting any municipal taxes within the affected territories. The bill also sought an adjudication holding void and of no effect the above mentioned compromise order in the quo warranto proceeding in the Circuit Court and also holding void a decree entered by Special Chancellor Finkelstein in a subsequent action holding the territories in question were and had been since the passage of the annexation ordinances a part of the City of Chattanooga.

We reverse the holding of the Chancellor that such territories had been "de-annexed" and affirm the holding that there can be no abatement or recovery of taxes because the City allegedly has not as yet furnished all the services embraced within the plan of annexation, or because the annexation ordinances had been "abandoned", as insisted. If there is a remedy for dereliction in not furnishing the services stipulated, it is not the abatement of taxes.

It is conceded by complainants that the annexation ordinances were validly passed on November 26, 1968. Within thirty (30) days thereafter quo warranto suits were filed in the Circuit Court challenging the reasonableness of the action of the City in passing the ordinances of annexation. Nothing further appears to have been done except the filing of an answer to the suit attacking the ordinances until February 26, 1973, when an agreed order was entered by the Circuit Judge by the terms of which, among other things, the "services" to be furnished by the City were to some extent altered. In the meantime the Legislature passed an Act applicable to the City of Chattanooga providing what is referred to in the record as the "variable tax plan" under which the taxpayers of the annexed areas would be taxed only to the extent the contemplated services were actually being rendered by the City. The order then continued:

"5. That, if Chapter 420 of the Public Acts of 1971 shall ever be declared unconstitutional, or for any other reason it is inapplicable, then the annexation shall be governed by and effectuated under the statutes in effect at the time the ordinances (were) passed, but in no event shall the Relators or those annexed be liable for any taxes which would otherwise have accrued prior to any such adjudication."

The order concluded by stating that the suit was dismissed with prejudice effective December 1, 1971. On December 18, 1972, the Supreme Court *did hold* Chapter 420, Acts of 1971 unconstitutional, a possibility envisioned by the agreed order of February 26, 1973, Tenn., 488 S.W.2d 370. This suit was filed February 26, 1972.

■ Sharply debated in the briefs and in oral argument is the question whether the City ever passed a resolution compromising the original quo warranto proceeding. Complainants insist such a resolution was passed in legal form while the City insists nothing was done except that the Commissioners met informally in the office of the City Attorney and authorized him by a vote of 3 to 2 to sign the agreed order above mentioned. In the view we take we find it unnecessary to decide that issue for we are of the opinion that once the annexation ordinances were validly passed, as concededly they were, and there was never any adjudication by the courts that they were not validly passed the annexed territories became a part of the City of Chattanooga and could not be severed from it by any resolution passed by the governing body of the City.

■ Counsel for complainants strongly rely upon T.C.A. § 6–313, providing:

"Abandonment of Proceedings. Any annexation proceeding initiated under Sec. 6–309 or 6–311 may be abandoned and discontinued at any time by resolution of the governing body of the municipality. (Acts of 1955, Chapter 113, Sec. 4.)" This proceeding was initiated under T.C.A. 6–309.

Counsel seeks to equate "initiated" with "passage" of an ordinance passed after the hearing required or election held as re-

quired by T.C.A. § 6–311 and T.C.A. § 6–312, respectively. We cannot agree. On the contrary we think the purpose of the Legislature was to confer upon the governing body of the municipality the right to order an election by referendum, T.C.A. § 6–312, or hold a public hearing under T.C.A. § 6–311 upon its own initiative after publication describing boundary to be annexed and, having done either, decide to proceed no further with the annexation. To initiate either method is a far cry from formally passing an ordinance incorporating the affected area. To mention only one reason for abandoning the annexation, the municipal board might decide there was too much opposition to the proposal to make the annexation feasable or desirable. Other reasons could be imagined.

■ We are fortified in this conclusion by Chapter 10, now codified as T.C.A. § 6–304, of the same Act providing:

> "Contraction of limits. Any incorporated city or town, whether same shall have been incorporated by general or special act, may contract its limits within any given territory, provided three-fourths of the qualified voters voting in an election thereon assent thereto."

Construing these two Sections pari materia and as parts of the scheme devised by the Legislature for expanding and contracting the boundaries of municipalities we are driven to the conclusion that "initiated" cannot be given the same meaning as a completed and valid "passage" of an incorporation ordinance.

■ It results that the assignments of the City of Chattanooga must be sustained and we turn to the question of restitution by the City of taxes paid in the interim between the passage of the annexation ordinances and the decision of the Supreme Court holding the 1971 Act unconstitutional.

Since the 1971 Act was held unconstitutional and we have held that, even if passed, a resolution of the governing body of the City attempting to "de-annex" territories already validly annexed would be nu-

gatory and void it follows that the annexed territories were as much a part of the City of Chattanooga as the pre-existing portion of the City and that the people living within the annexed territories would necessarily be compelled to pay the same taxes as the people living within the original boundaries. This seems to have been recognized by the parties; otherwise, the 1971 Act would never have been conceived of or enacted.

It results that, unless estopped by the act of the City Treasurer in mailing notices stating the tax was to be subject to the provisions of the Act of 1971 the people living in the annexed territories cannot be relieved of paying the same taxes as other residents of the City. We are not persuaded that this action can have the asserted effect. As we have held these outlying residents were subject to the same tax burden as residents living within the old boundaries of the City. They were, therefore, not prejudiced by this action or by the terms of the agreed order purporting to relieve them of taxes until the determination of the constitutionality of the 1971 Act, and cannot complain, the time for filing quo warranto, as we understand the record, having already expired.

It is well settled that, absent some loss or injury, estoppel cannot be applied. Osborne v. Baker, 35 Tenn.App. 300, 245 S. W.2d 419. Numerous cases could be cited for the rule.

And, generally, the doctrine of estoppel does not apply to acts of public agents. State v. Williams, 207 Tenn. 695, 343 S. W.2d 857.

The action of the Chancellor in holding residents and taxpayers of the annexed territories not entitled to recover taxes paid is, accordingly, affirmed though we base this holding upon a different ground.

Costs of appeal will be taxed to complainants and sureties on their appeal bond. Costs below will remain as taxed.

Except as modified the decree of the Chancellor is affirmed.