**STATE HIGHWAY COMMISSION OF MISSOURI, Respondent,**

v.

**William and Marlene BODINE, Appellants.**

**No. WD 30933.**

Missouri Court of Appeals, Western District.

July 8, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 4, 1980.

S.W.2d 733 (Mo. banc 1979) so the standard adopted in *Seales* does not apply in this case.

Robert L. Hyder, Jefferson City, for appellants; Hyder, McHenry & Prenger, Jefferson City, of counsel.

Bruce Ring, Chief Counsel, Dennis J. Redel, Asst. Counsel, Missouri Highway and Transportation Commission, Jefferson City, for respondent.

Before WASSERSTROM, C. J., Presiding, and PRITCHARD and KENNEDY, JJ.

PRITCHARD, Judge.

Appellants were permanently enjoined from unauthorized access to a no access right-of-way of Interstate Highway 70 in Cooper County, Missouri. The area lies to the west and southwest of the Lamine River which is crossed to the east of the area by I–70. Appellants' predecessor in title was one Irene Wilson and she, on July 21, 1961, granted to the State of Missouri through respondent portions of her lands lying in the SW ¼ of the NW ¼ and the NW ¼ of the SW ¼ of Section 10, Township 48 N, Range ·19 West, for the construction of I–70. The deed also included this grant: "Also all abutters' rights of direct access between the highway now known as U. S. Route 70 and Grantors' abutting land in the SW ¼ of the NW ¼ and the NW ¼ of the SW ¼ of Sec. 10, T48N, R19W." Through mesne conveyances appellants acquired the latter forty acre tract, upon which their residence is located, and which if they have no right of access onto respondent's no access right-of-way to an outer road of I–70, appears to be landlocked.

After 1966, when appellants took up residence on the property, they gained access to the outer road of I–70 along a dirt driveway across adjoining property to the east (belonging to Copelands) to an authorized point of access at a service station owned and operated by the Copelands. For reasons not clearly appearing in the record, this dirt driveway was physically blocked by posts in early 1971, and its further use was denied. Appellants then began going across the interstate right-of-way from their property directly to either the outer road or to the eastbound ramp of I–70. This action brought appellants in conflict with respondent and after communications, appellants' request for authorized access was denied for safety reasons. After repeated requests by state officials for appellants to cease the unauthorized use of the no access area were unavailing, this injunction suit was filed by respondent, and during its pendency, appellants have resided elsewhere.

The disposition of this case turns upon whether appellants, by reason of an error in locating their quarter-quarter line in a survey which resulted in right-of-way stakes being placed upon their property in a small triangular tract, which was not deeded or condemned, gave them a right of direct access to the outer road. The approximate locations of appellants' property and respondent's right-of-way and markers is shown by the following sketch, which is composed from the exhibits in the case:

It has been the law that an abutting landowner to a highway has the right to construct entranceways to the highway for his own use provided they do not materially interfere with the public's use of the highway. *State ex rel. State Highway Commission v. Hoffmann*, 132 S.W.2d 27, 32[9, 10] (Mo.App.1939), which case held also that the right of an owner of land to pass from it onto the highway is a valuable one. The *Hoffmann* case undoubtedly applies to ordinary highways as it was decided prior to Const. Mo. 1945, Art. IV, § 29, which granted to the State Highway Commission, " * * * authority over and power to * * * limit access to, from and across state highways where the public interest and safety may require * * *." *State ex rel. State Highway Commission v. James,* 205 S.W.2d 534, 537 (Mo. banc 1947), noted the constitutional provision, and that any easement of access could only be limited by the consent of the owner or by the exercise of the power of eminent domain with just compensation to be ascertained and paid as provided by statute.

Assuming that Irene Wilson had a right of access from the land in question when she owned it in 1961 to old U. S. Highway 40 to its north (or to any other abutting roadway) by her deed, and for a recited consideration of $7,600, she effectively granted her access rights to respondent, and thereby cut off the rights of any subsequent owners, here the appellants, to enter upon the right-of-way. Irene Wilson's deed quite apparently correctly described the property, and it is the instrument conveying her rights. Thus, it is of no moment that survey plans of respondent incorrectly placed the right-of-way lines on appellants' land so as to encompass the small triangular tract thereon. All that erroneous survey resulted in was an encroachment or a trespass on appellants' property for which they may be entitled to damages in some amount as below discussed.

The trial court correctly granted respondent's requested relief under all the evidence. See the analogous case of *State of Tennessee ex rel. Moulton, Commissioner of Highways v. Williams, et ux.*, 207 Tenn. 695, 343 S.W.2d 857 (1961), where the abutting landowners of a road leading into a road which was closed at a limited access highway were enjoined from cutting a fence at a closed crossing and from crossing over such highway. The Tennessee court noted that appellees had a right to damages by inverse condemnation, as their former right of access to their abutting roadway had never been condemned, but under Tennessee law, an action for those damages was not cognizable in a court of equity but only in a court of law. Here, no right to inverse condemnation existed because the predecessor in title, Irene Wilson, had by her deed foreclosed access to appellants' land.

As appears by the above drawing, had the original plan or survey been made from the actual quarter-quarter section line, point 113.7R would not have encroached upon appellants' property. The area encompassed in the triangle is small, perhaps about 98 square feet. Appellants pleaded by way of counterclaim inverse condemnation for the taking of their property, and under these facts, as noted, that action does not lie. Appellants should be given the opportunity to amend their counterclaim to ask for damages in trespass, and for injunctive relief against a continuance thereof as to the triangular tract if they so desire.

The judgment as to the permanent injunction against appellants is affirmed. The judgment on appellants' counterclaim is affirmed, but that matter is remanded for further proceedings.

All concur.