STEVEN RAY COLEMAN,      )
                                  )
        Plaintiff/Appellant,    )      Appeal No.
                                  )      01-A-01-9805-BC-00239
v.                          )
                                  )      Claims Commission
STATE OF TENNESSEE,     )      No. 301091
                                  )
        Defendant/Appellee.    )
                                  )

FILED

March 17, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE TENNESSEE CLAIMS COMMISSION OF
DAVIDSON COUNTY,
AT NASHVILLE, TENNESSEE


THE HONORABLE W. R. BAKER, COMMISSIONER


RAYMOND W. FRALEY, JR.
JOHNNY D. HILL, JR.
205 East Market Street
Post Office Box 572
Fayetteville, Tennessee  37334
      ATTORNEYS FOR PLAINTIFF/APPELLANT



JOHN KNOX WALKUP
Attorney General and Reporter

MICHAEL E. MOORE
Solicitor General

MARY M. BERS
Assistant Attorney General
Civil Rights and Claims Division
Cordell Hull Building, Second Floor
426 Fifth Avenue North
Nashville, Tennessee  37243
      ATTORNEYS FOR DEFENDANT/APPELLEE



AFFIRMED AND REMANDED


WILLIAM B. CAIN, JUDGE

# OPINION

This appeal involves the jurisdiction of the Tennessee Claims Commission. Plaintiff appeals the dismissal by the Claims Commission of his claim filed under Tennessee Code Annotated section 9-8-307(a)(1)(M) on the basis that the Claims Commission lacks subject matter jurisdiction. For the reasons stated in this opinion, we affirm the decision of the Claims Commission to dismiss this claim.

On October 20, 1992, Tennessee Alcoholic Beverage Commission (ABC) Special Agent, Mark Hutchens, acting on information he received, contacted Bedford County Sheriff Don Edwards. Agent Hutchens sought the assistance of Sheriff Edwards and members of his department in the investigation of a suspected drug transaction believed to be scheduled to take place that evening at the Rattlesnake Lodge in rural Bedford County, Tennessee. Sheriff Edwards agreed to assist and brought with him sheriff's deputies McCullough, Brown and Owens. ABC agents Jim Ray and Jim Richardson accompanied Agent Hutchens.

Agent Hutchens and Sheriff Edwards arrived first at Rattlesnake Lodge in an unmarked car driven by Agent Hutchens. They were followed by other vehicles occupied by the ABC officers and sheriff's deputies. Upon arrival at the lodge, Hutchens and Edwards observed two individuals standing beside a car outside of the lodge. These individuals were later identified as the claimant Steven Ray Coleman and Billy White.

Agent Hutchens and Sheriff Edwards emerged from their vehicle and shouted their identity as police officers. Coleman and White ran from the scene into heavy grass area and toward the nearby river. Agent Hutchens raced in pursuit. He later testified that someone fired shots at him from the area to which Coleman and White had fled. Hutchens returned fire with two shots from his weapon. Neither Coleman nor White were hit by this gunfire and Hutchens did not fire again. White leaped up from the grass and raced to his left disappearing from sight and was not apprehended by any of the officers. Claimant Coleman

ran to his right toward the river, jumped in the river and started to swim across to the opposite side. Gunshots were fired at him by persons never identified. One of these gunshots struck him while he was in the water and seriously injured him. He reached the opposite bank of the river and yelled to the officers for help asserting that he had been hit. Officers and paramedics attended him at the scene and he was dispatched first to the Bedford County Hospital and from there transferred to Vanderbilt University Medical Center.

According to claimant Coleman, he had been invited by Billy White to participate in a high stakes dice game at Rattlesnake Lodge. In route to the lodge, his automobile overheated and he stopped at the home of his friend, Ricky Mencer, to borrow an automobile and continue his journey to the lodge. He borrowed the automobile belonging to Mencer's girlfriend, Deborah Cooper, and drove on to the lodge where he and Billy White were awaiting the arrival of a "high fader." When they saw the unmarked car of Hutchens and Edwards arrive, they thought they were going to be robbed and thereupon ran from the scene. Subsequently a search warrant was issued for search of the Deborah Cooper automobile, and a suitcase containing approximately ninety pounds of marijuana was taken from the trunk of the car.

Suit was brought by the claimant in the United States District Court for the Eastern District of Tennessee against Bedford County and the county personnel involved. The federal suit was resolved before trial.

The State of Tennessee and its employees acting within the scope of their employment are protected by the doctrine of governmental immunity and thus can only be sued under statutory exceptions to this doctrine and only before the Tennessee Claims Commission which has exclusive jurisdiction to adjudicate the merits of claims under statutory exceptions to governmental immunity. Coleman first filed his claim alleging several of the exceptions to governmental immunity provided by Tennessee Code Annotated section 9-8-307. However, by agreed order the case was subsequently entered for trial limited to section 9-8-307(a)(1)(M). The applicable statutory provision as it existed in 1992 states:

> The commission or each commissioner sitting

> individually has exclusive jurisdiction to determine all monetary claims against the state falling within one (1) or more of the following categories: . . .
> (M) Negligent operation of machinery or equipment.

Tenn. Code Ann. § 9-8-307(a)(1)(M)(1992).

The claim was tried on oral evidence before W. R. Baker, Claims Commissioner, on January 23, 1996. The Claims Commission dismissed the claim on the basis that it had no jurisdiction because Tennessee Code Annotated section 9-8-307(d) prohibits judgment against the State for "any willful, malicious or criminal acts by state employees." The Claims Commission made a specific finding that the shooting of Claimant was willful rather than negligent and that governmental immunity had not been waived as to such willful acts under the specific provisions of section 9-8-307(d).

On appeal the State asserts that the Claims Commission had no subject matter jurisdiction but on a different basis than asserted by the Claims Commission. The State asserts that the preponderance of the evidence at the trial showed that no state employee fired a shot at Claimant while he was in the water and that the definition of "state employee" in Tennessee Code Annotated section 8-42-101(3) does not include a deputy of the Bedford County Sheriff's Office. We agree with the State in its position that the firing of the offending shot cannot be determined as a matter of law to have been willful within the meaning of section 9-8-307(d) rather than negligent within the meaning of section 9-8-307(a)(1)(M). Therefore, the basis on which the Claims Commission found that it lacked subject matter jurisdiction is erroneous.

Two questions remain for disposition, to wit:

1. Did Claimant carry his burden of proof by a preponderance of the evidence to establish that the offending shot was fired by an ABC agent?

2. If not, can the State be held liable for the actions of a Bedford County Deputy Sheriff?

As to the first question, it is conclusively established that the two shots

originally fired by Agent Hutchens could not have caused the injuries to Claimant as they were fired long before Coleman reached the river and all of the testimony, including the testimony of claimant Coleman, establishes that he was actually shot while swimming the river. There is no evidence that Hutchens fired any other shots. Agent Richardson was carrying a shotgun and there is no evidence that a shotgun was ever fired. Agent Ray never fired his weapon and never saw Coleman until after he had reached the opposite bank of the river. Bedford County Deputy Jesse Owens fired a shot into the air while Coleman was wading across the river up to his armpits. He saw bullets hit the water close to Coleman but did not see who was firing. Owens fired again but claimed it was "way over" Coleman's head. Taken as a whole, the evidence fails to establish that the shot fired into the body of claimant Coleman while he was swimming the river was fired by any ABC agent.

This brings us to the status of Bedford County deputies as far as the responsibility of the State for their conduct is concerned. It is first well to reiterate that for good or ill, sovereign immunity is still alive and well in Tennessee, and neither the State nor its employees, acting within the scope of their authority, can be liable in tort except to the extent that governmental immunity has been specifically waived by legislative enactment. *Hill v. United States*, 453 F.2d 839, 15 ALR Fed. 658 (6th Cir.1972). The very language of Tennessee Code Annotated subsections 9-8-307(d),(e),(f),(g) and (h) reemphasize the reservation of sovereign immunity except to the specific degree the same is removed by this statute.

> The State, as sovereign, is immune from suit except as it consents to be sued.
> The rule of sovereign immunity in Tennessee is both constitutional and statutory. It is not within the power of the courts to amend it.
> A statute permitting suit against the State must be strictly construed, and jurisdiction cannot be enlarged by implication.

*Brown v. State*, 783 S.W.2d 567, 571 (Tenn.App.1989)(citations omitted).

The effect of sovereign immunity prevailing in Tennessee, both by constitutional provision and legislative enactment, has long been settled:

> The State of Tennessee, as a sovereign, is immune from suit except as it consents to be sued. Article I, Sec. 17, Constitution of Tennessee; Code Section 8634; *Scates v. Board of Commissioners of Union City*, 196 Tenn. 274, 265 S.W.2d 563; *Phillips v. Marion County*, 166 Tenn. 83, 59 S.W.2d 507; *Quinton v. Board of Claims*, 165 Tenn. 201, 54 S.W.2d 953; *Insurance Co. v. Craig*, 106 Tenn. 621, 62 S.W. 155; *Moore v. Tate*, 87 Tenn. 725, 11 S.W. 935, 10 Am.St.Rep. 712. This being true it necessarily follows that except as the Legislature of the State consents there is no jurisdiction in this Board of Claims to entertain suits against the State.
>
> Legislative Acts conferring jurisdiction upon this Board of Claims to adjudicate claims against the State of Tennessee are and must of necessity be strictly construed. This Board's jurisdiction is limited to the cases specified in the Act, and this limitation cannot be enlarged by implication.

*Hill v. Beeler*, 199 Tenn. 325, 328-29, 286 S.W.2d 868, 869 (Tenn.1956). The eloquent, passionate and persuasive condemnation of sovereign immunity by Justice Henry remains a dissent. *See Cooper v. Rutherford County*, 531 S.W.2d 783, 785-792 (Tenn.1975)(Henry J., dissenting).

The shooting of Coleman occurred on August 20, 1992. As stated, the controlling statute at that time read, in pertinent part:

> The Commission or each Commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state falling within one (1) or more of the following categories: . . .
> (M) Negligent operation of machinery or equipment.

Tenn. Code Ann.§ 9-8-307 (a)(1)(M)(1992). Another subsection of the same code section provided as follows:

> State officers and employees are absolutely immune from liability for acts or omissions within the scope of the officers' or employees' office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain. For the purposes of this chapter, "state officer" or "employee" has the meaning set forth in § 8-42-101(a)(3).

Tenn. Code Ann. § 9-8-307 (h)(1992).

The extensive definition of "state employee" set forth in Tennessee Code Annotated section 8-42-101(3) does not include county sheriffs and deputy sheriffs. A specific provision was added to the statute by chapter 63 of the Public Acts of 1989, effective March 20, 1989, which provides:

(C) "State employee" under this chapter and under title 9, chapter 8, also includes, as a volunteer, a person designated by the district attorney general of each judicial district as a member of a judicial district task force relating to the investigation and prosecution of drug cases. The district attorney general of each judicial district shall register only the names of properly qualified and designated task force members with the board of claims. Any member of such a task force designated by the district attorney general shall meet the criteria for qualifying as such a member as set forth in rules and regulations promulgated by the commissioner of finance and administration. The commissioner, after consultation with the department of safety and the Tennessee bureau of investigation, is authorized to promulgate rules and regulations to determine who shall qualify to be designated as a member of such judicial district task forces. Such rules and regulations may set criteria for qualifications of members and may set limits on the numbers of task force members from each district who may be registered. All such rules and regulations shall be promulgated in accordance with the provisions of the Uniform Administrative Procedures Act, compiled in title 4, chapter 5. Task force members are not eligible for workers' compensation benefits from the state of Tennessee;

Tenn. Code Ann. § 8-42-101(3)(C)(Supp.1988). Thus, a deputy sheriff or any other persons specifically designated as a member of a judicial district drug task force becomes a "state employee" within the meaning of Tennessee Code Annotated section 9-8-307.

The record in this case does not disclose that either Sheriff Edwards or any of his deputies involved in the August 20, 1992 events at or around Rattlesnake Lodge in Bedford County, Tennessee were members of the Judicial District Drug Task Force. Since the Bedford County Sheriff and deputy sheriffs were not "state employees," the Claims Commission lacks subject matter jurisdiction under the strict construction rule that we are mandated to apply to Tennessee Code Annotated section 9-8-307. The enabling statute does not waive sovereign immunity so as to establish a basis for vicarious liability of the state for the acts or omissions of persons who are not "state employees."

The judgment of the Claims Commission is affirmed for reasons herein set forth. Costs are assessed against the appellant.

_____
WILLIAM B. CAIN, JUDGE


CONCUR:


_____
BEN H. CANTRELL, P.J., M.S.


_____
WILLIAM C. KOCH, JR., JUDGE