# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 21, 2016 Session

## FELISHA ROBINSON v. UNIVERSITY OF TENNESSEE HEALTH SCIENCE CENTER

### Appeal from the Chancery Court for Shelby County
### No. CH1502672     Jim Kyle, Chancellor

_____

### No. W2015-01695-COA-R9-CV – Filed February 22, 2016
_____

This is a Tennessee Rule of Appellate Procedure 9 interlocutory appeal. Appellant The University of Tennessee appeals the trial court's denial of its Tennessee Rule of Civil Procedure 12.02(1) motion to dismiss Appellee's Tennessee Human Rights Act ("THRA") claim for discrimination. Appellee, a student enrolled in The University of Tennessee Health Science Center's College of Nursing, was dismissed from the program after receiving a failing grade in the clinical portion of her studies. She filed suit in the Chancery Court of Shelby County for racial discrimination under the THRA and for alleged violation of the equal protection and due process protection provisions of the Tennessee Constitution. The trial court dismissed Appellee's equal protection and due process claims, but determined that Tennessee Code Annotated Section 4-21-311(a) evinced a legislative intent to waive the State's sovereign immunity for Appellee's THRA claims. Section 4-21-311(a) governs THRA claims for employment discrimination. However, Appellee's THRA claim is for alleged discrimination by a funded program. As such, Appellee's claim is governed by Part 9 of the THRA (specifically, Tennessee Code Annotated Section 4-21-905). Part 9 contemplates only administrative remedies for such violations, and we cannot find a clear legislative intent to waive sovereign immunity so as to allow Appellee to file her initial lawsuit in the chancery or circuit court. Accordingly, we reverse the trial court's order and remand for entry of an order of dismissal as to Appellee's THRA claim.

### Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Chancery Court is Reversed and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD,

P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Frank H. Lancaster and Mark M. Petzinger, Knoxville, Tennessee, for the appellant, University of Tennessee.

Darrell J. O'Neal, Memphis, Tennessee, for the appellee, Felisha Robinson.

**OPINION**

**I. Background**

It is undisputed that Appellant The University of Tennessee ("UT") is a public institution of higher learning created by the Tennessee General Assembly. Tenn. Code Ann. § 49-9-101, *et seq*. UT has a College of Nursing at its Health Science Center in Memphis ("UTHSC"). Through its College of Nursing, UT grants a Doctor of Nursing Practice degree ("DNP") with an option for nurse anesthetist concentration. The nurse anesthetist concentration is a three year program that culminates in a DNP degree with a core concentration in anesthesia. This concentration prepares the graduate to become a Certified Registered Nurse Anesthetist ("CRNA"). Appellee Felisha Robinson was enrolled in UTHSC's College of Nursing and was seeking her CRNA degree. The nurse anesthetist program requires four terms of didactic course work followed by four terms of clinical education. For the clinical portion of the program, UTHSC assigns students to a local clinical site.

Ms. Robinson, who is black, enrolled in the CRNA program at UTHSC in 2012. She completed the didactic portion of the degree and then moved into the clinical portion of her studies. In December of 2014, the UTHSC clinical coordinator and some of the physicians, with whom Ms. Robinson worked at the clinical site, met with her to discuss a certain incident that occurred on or about November 17, 2014. This incident is only vaguely described in the complaint. Furthermore, UT is constrained from providing evidence about the incident because of its Patient Safety and Quality Improvement Policy. Nonetheless, the nature of the incident is not germane to the instant appeal. Suffice it to say, Ms. Robinson received a grade of "F" for her Fall 2014 clinical course. Prior to this failing grade, Ms. Robinson was in good academic standing with a G.P.A. of 3.68. Under the terms of the UTHSC College of Nursing Catalog, DNP "[s]tudents earning . . . a grade of 'F' are dismissed from the program." Because Ms. Robinson received an "F," she was dismissed from the program.

On March 3, 2015, Ms. Robinson filed suit against UTHSC in the Shelby County Chancery Court. She was granted leave to amend her complaint on June 19, 2015 and on August 18, 2015. In Count 1 of her complaint, Ms. Robinson alleged racial discrimination in violation of the Tennessee Human Rights Act, Tennessee Code Annotated Section 4-21-101, *et seq.* ("THRA"). In Count 2 of the complaint, Ms. Robinson alleged violation of the due process and equal protection provisions of the Tennessee Constitution. The instant appeal involves only the THRA claim.

On April 30, 2015, UT filed a Tennessee Rule of Civil Procedure 12.02(1) motion to dismiss the complaint. UT sought dismissal on the basis that sovereign immunity bars Ms. Robinson's claims and that the trial court, therefore, lacked subject matter jurisdiction. On June 1, 2015, Ms. Robinson filed a response in opposition to the motion to dismiss, and UT replied on June 8, 2015. On June 24, 2015, the trial court heard the motion to dismiss, and, on July 7, 2015, entered an order, which denied UT's motion to dismiss Count 1, the TRHA claim, but granted its motion as to the equal protection and due process claims. In denying the motion to dismiss the THRA claim, the trial court explained: "The Court is . . . of the opinion that under the [THRA], [Appellant] and [Appellee] are both persons and as such the Court has jurisdiction over the [Appellant] under the . . . Act. Thus [Appellant's] Motion to Dismiss for lack of subject matter jurisdiction under the [THRA] is denied."

Although the trial court denied the motion to dismiss the THRA claim, by order of August 28, 2015, the trial court granted UT's request for interlocutory appeal under Tennessee Rule of Appellate Procedure 9. By order of September 11, 2015, this Court granted UT's request for interlocutory appeal; however, by order of September 18, 2015, we denied Ms. Robinson's request to cross-appeal the trial court's grant of UT's motion to dismiss her constitutional claims.

## II. Issue

The following question was certified for review:

Is there a sovereign immunity waiver creating a judicial cause of action against the State of Tennessee and its agencies, such as the University of Tennessee, for an alleged violation of Tenn. Code Ann. §4-21-904.

## III. Standard of Review

A motion to dismiss for lack of subject matter jurisdiction falls within the purview of Tenn. R. Civ. P. 12.02(1). Challenges to a court's subject matter jurisdiction call into question the court's "lawful authority to adjudicate a controversy brought before it." *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). Whenever subject matter

jurisdiction is challenged, the burden is on the plaintiff to demonstrate that the court has jurisdiction to adjudicate the claim. *See Staats v. McKinnon*, 206 S.W.3d 532, 543 (Tenn. Ct. App. 2006); 1 Lawrence A. Pivnick, Tennessee Circuit Court Practice § 3:2 (2011 ed.).

Litigants may take issue with a court's subject matter jurisdiction using either a facial challenge or a factual challenge. *See, e.g., Schutte v. Johnson*, 337 S.W.3d 767, 769-70 (Tenn. Ct. App. 2010); *Staats*, 206 S.W.3d at 542. A facial challenge is a challenge to the complaint itself. *Schutte*, 337 S.W.3d at 769. Thus, when a defendant asserts a facial challenge to a court's subject matter jurisdiction, the factual allegations in the plaintiff's complaint are presumed to be true. *Staats*, 206 S.W.3d at 542-43. Alternatively, "[a] factual challenge denies that the court actually has subject matter jurisdiction as a matter of fact even though the complaint alleges facts tending to show jurisdiction." *Id.* at 543. Thus, the factual challenge "attacks the facts serving as the basis for jurisdiction." *Schutte*, 337 S.W.3d at 770.

For the purposes of its Tennessee Rule of Civil Procedure 12.02(1) motion to dismiss, UT argues for dismissal of Ms. Robinson's THRA claim on the basis that Tennessee Code Annotated Section 4-21-311, *infra,* does not create an initial cause of action in the chancery or circuit court for violation of Part 9 of the THRA. Thus, Appellant argues that the chancery court lacked subject matter jurisdiction to decide Ms. Robinson's THRA claim. Accordingly, UT's challenge to the trial court's subject matter jurisdiction is facial, not factual. Therefore, the trial court's decision regarding the existence of subject matter jurisdiction is a question of law. It follows, then, that we will review the trial court's conclusions regarding subject matter jurisdiction without a presumption of correctness. *See Northland Ins.*, 33 S.W.3d at 729; *see also Schutte*, 337 S.W.3d at 769.

To the extent that the question of the trial court's subject matter jurisdiction over Ms. Robinson's THRA claim requires interpretation of the THRA, we are guided by the familiar rules of statutory construction. "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995) (citing *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn.1993)). "The text of the statute is of primary importance." *Mills v. Fulmarque*, 360 S.W.3d 362, 368 (Tenn. 2012). A statute should be read naturally and reasonably, with the presumption that the legislature says what it means and means what it says. *See BellSouth Telecomm'ns., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997).

Statutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both. "[T]he construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010) (quoting *Wilson v. Johnson Cnty*., 879 S.W.2d 807, 809 (Tenn.1994)). We seek to adopt the

most "reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws." *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn. 1997). Issues of statutory interpretation present a question of law, which we review *de novo* on appeal, giving no deference to the trial court's decision. *Mills*, 360 S.W.3d at 366; *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

Finally, a basic rule of statutory construction provides that a general statute concerning a subject must defer to a more specific statute concerning the same subject. *See Five Star Exp., Inc. v. Davis*, 866 S.W.2d 944, 946 (Tenn. 1993). The Tennessee Supreme Court stated the basis for this rule in *Koella v. State ex rel. Moffett*:

> Where there is a general provision applicable to a multitude of subjects, and also a provision which is particular and applicable to one of these subjects, and inconsistent with the general provision, it does not necessarily follow that they are so inconsistent that they both cannot stand. The special provision will be deemed an exception, and the general provision will be construed to operate on all the subjects introduced therein except the particular one which is the subject of the special provision.

*Koella*, 405 S.W.2d 184, 189 (Tenn. 1966) (quoting *State v. Safley*, 172 Tenn. 385, 112 S.W.2d 831 (Tenn.1938)).

## IV. Analysis

Tennessee Code Annotated Section 4-21-311, which is part of the THRA, provides, in relevant part that "[a]ny person injured by an act in violation of this chapter shall have a civil cause of action in chancery court or circuit court." Ms. Robinson relies upon this language to argue that UT's sovereign immunity was waived. As discussed in *Hoge v. Roy H. Park Broadcasting, Inc.*, 673 S.W.2d 157 (Tenn. Ct. App. 1984):

> Tennessee law provides three (3) ways in which a victim of alleged **employment discrimination** may proceed. First of all, he may file administratively through the Tennessee Commission for Human Development (now Tennessee Human Rights Commission). . . . Said filing must be done within 180 days of the alleged discriminatory act . . . . If the victim chooses the administrative route, the second way to proceed would follow the final decision of the Commission. That would be to file a complaint with the Chancery Court to review the decision of the administrative agency . . . . The third way to proceed . . . is to file a direct action in the Chancery Court . . . .

*Id*. at 158 (emphasis added).

The Tennessee Supreme Court has consistently held that a waiver of sovereign immunity will not be found "unless there is a statute clearly and unmistakably disclosing an intent upon the part of the Legislature to permit such litigation." *Davidson v. Lewis Brothers Bakery*, 227 S.W.3d 17, 19 (Tenn. 2007) (quoting *Scates v. Bd. of Comm'rs of Union City*, 265 S.W.2d 563, 565 (Tenn. 1954)). In *White v. State*, No. M1999-00713-COA-R3-CV, 2001 WL 134601 (Tenn. Ct. App. Feb. 16, 2001), this Court described the standards we are to apply when deciding whether the Legislature has waived sovereign immunity:

> Statutes permitting the State to be sued for money damages must be strictly construed because they are in derogation of the common law. *Hembree v. State*, 925 S.W.2d 513, 516 (Tenn. 1996); *Beare Co. v. Olsen*, 711 S.W.2d 603, 605 (Tenn. 1986); *Stokes v. University of Tennessee*, 737 S.W.2d 545, 546 (Tenn. Ct. App. 1987). Any statute purporting to waive the State's sovereign immunity must be "so plain, clear and unmistakable as to leave no room for doubt of the intention of the legislature." *Quinton v. Board of Claims*, 165 Tenn. [201,] at 214-15, 54 S.W.2d [953,] 957 [(Tenn.1932)]; *Hise v. State*, 968 S.W.2d 852, 853 (Tenn. Ct. App. 1997). Thus, the courts may not presume that the General Assembly waived sovereign immunity any more than the express statutory language [provides]. *Daley v. State*, 869 S.W.2d 338, 340 (Tenn. Ct. App. 1993).

*White*, 2001 WL 134601, at *3. In light of the discussion set out in the *Hoge* opinion (*supra*), we cannot read Section 4-21-311 as a waiver of UT's sovereign immunity; rather, Section 4-21-311 merely addresses an alternative means of pursuing a claim for employment discrimination against entities that fall under the auspices of the THRA.

Importantly, Ms. Robinson's THRA claim is not one for employment discrimination. Rather, her claim is for discrimination by a funded program.[1] This THRA cause of action is addressed in Part 9 of the THRA and, specifically, in Section 4-21-904, which encompasses "discrimination by funded programs . . . ." Section 4-21-904 provides:

> It is a discriminatory practice for any state agency receiving federal funds making it subject to Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d, *et seq.*) or for any person receiving such federal funds from a state

---

[1] Part 4 of the THRA, Tenn. Code Ann. § 4-21-401, *et seq.*, forbids employment-related discrimination; Part 5 of the THRA, Tenn. Code Ann. § 4-21-501, *et seq.* forbids discrimination in public accommodations; and Part 6, Tenn. Code Ann. § 4-21-601, *et seq.*, forbids discrimination in housing and financing. In addition to these substantive provisions against various types of discrimination, Part 3 of the THRA, Tenn. Code Ann. § 4-21-301, *et seq.*, entitled "Violations—procedures," sets out the general administrative remedial scheme under the THRA.

agency, to exclude a person from participation in, deny benefits to a person, or to subject a person to discrimination under any program or activity receiving such funds on the basis of race, color, or national origin.

Based upon Ms. Robinson's complaint, the only substantive portion of the THRA applicable to her case is Part 9. Section 4-21-905 specifically addresses the procedure for filing a complaint for alleged discrimination by a funded program under Part 9 of the THRA. The statute provides, in relevant part, that:

> (a) Any person claiming to be aggrieved by a discriminatory practice under this part may file a complaint with the state department, agency or entity receiving the funds within one hundred eighty (180) days of the occurrence of the alleged discriminatory act. Any such complaint filed with a state department, agency or entity is subject to review by the Title VI compliance commission for applicability under Title VI of the Civil Rights Act of 1964 . . . .
> (b) Any person claiming to be aggrieved by a discriminatory practice under this part may also file a complaint with the Title VI compliance commission, in the same manner established in § 4-21-302, for other discriminatory practices. If such a complaint is filed with the Title VI compliance commission pursuant to this section, then the commission shall exercise the same powers and shall observe the same procedures as are set forth in part 3 of this chapter for the human rights commission when complaints of other discriminatory practices are filed with the commission pursuant to § 4-21-302.

Although Section 4-21-905 refers to the procedure outlined in Section 4-21-302, Section 4-21-905 refers only to those procedures applicable when a plaintiff files his or her claim with the commission. Importantly, however, Section 4-21-905, unlike Section 4-21-302, does not contemplate a third procedure of filing a complaint directly with the chancery court as allowed in cases alleging employment discrimination under the THRA. Rather, as set out in annotations to Section 4-21-905, "[t]he human rights commission has authority to process complaints alleging violations of T.C.A. § 4-21-904" and to exercise all authority granted to the commission under Tennessee Code Annotated Section 4-21-302. In other words, the Legislature imported, into Part 9 of the THRA, only **portions** of Part 3 of the THRA—the administrative remedy portions, but not the judicial remedy provision. Part 9 of the THRA contains no reference to Section 4-21-311(a), the section of Part 3 that allows enforcement of THRA violations by a lawsuit filed initially in chancery or circuit court. "Omissions are significant when statutes are express in certain categories but not others." *Carver v. Citizen Utility Co.*, 954 S.W.2d 34, 35 (Tenn. 1997). In other words, in interpreting Legislative intent, courts "may employ the Latin maxim, *expression unius est exclusion alterius*, which translates as 'the expression of one thing implies the exclusion of . . . things not expressly mentioned.'" *Wells v. Tenn. Bd. of Regents*, 231 S.W.3d 912, 917 (Tenn. 2007).

In cases, such as the one at bar, where a complainant alleges racial discrimination on the part of a funded program, the circuit and chancery courts do not have primary jurisdiction to hear the initial case. Rather, the jurisdiction of the chancery or circuit court is limited to review of the commission's action after the Section 4-21-905 procedures are exhausted. Specifically, Tennessee Code Annotated Section 4-21-307 provides:

> A complainant, respondent or intervenor aggrieved by an order of the commission, including an order dismissing a complaint. . . may obtain judicial review . . . in a proceeding brought in the chancery court or circuit court . . . .

Having determined that Tennessee Code Annotated Section 4-21-311 is not applicable to THRA cases, such as the instant case, involving allegations of discrimination against a funded program, Ms. Robinson cannot rely on the judicial remedy outlined in Section 4-21-311 to argue that the Legislature intended that section to waive or expand the administrative remedies outlined in Part 9 for alleged violations by a funded program. No party may bring a suit against "the State" except "in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17; *accord* **N. British & Mercantile Co. v. Craig**, 106 Tenn. 621, 62 S.W. 155, 157 (Tenn. 1901). "[T]he State" includes "the departments, commissions, boards, institutions and municipalities of the State." **Metro. Gov't of Nashville & Davidson County v. Allen**, 415 S.W.2d 632, 635 (Tenn. 1967). We will not find a waiver of the State's sovereign immunity "unless there is a statute clearly and unmistakably disclosing an intent upon the part of the Legislature to permit such litigation." **Scates**, 265 S.W.2d at 565. Here, Part 9 of the THRA is sufficiently clear, and there is no language indicating the Legislature's intent to waive sovereign immunity so as to allow a plaintiff to file a lawsuit in the chancery or circuit courts alleging discrimination by a funded program. Rather, as discussed above, discrimination by the State of the type described in Tennessee Code Annotated Section 4-21-904 can be the basis of an administrative remedy as set out in Section 4-21-905; however, it cannot be the basis of a lawsuit against the State and its agencies under Section 4-21-311(a), which addresses allegations of employment discrimination.

## V. Conclusion

For the foregoing reasons, we reverse the order of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion, including, but not limited to, entry of an order of dismissal as to Appellee's THRA claim. Costs of the appeal are assessed against the Appellee, Felisha Robinson, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE